# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| **SWEETSER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Case No. _____ |
| | § | |
| **NETSMART TECHNOLOGIES, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## COMPLAINT

Now comes Sweetser, by and through its counsel, and files this Complaint. In support of this Complaint, Sweetser respectfully states as follows:

## INTRODUCTION

1. This lawsuit arises out of a written License and Application Service Provider Agreement (the "Agreement") between Sweetser and Netsmart Technologies, Inc. ("Netsmart"), a true and correct copy of which is attached hereto as Exhibit "A." The Agreement is worth over $1.4 million and calls for Netsmart to provide Sweetser with specially developed and designed computer software, hardware, and related services. Despite the passage of over two years since the Agreement was executed and notwithstanding Sweetser's payment of over $1.2 million, Netsmart has not performed in conformance with its contractual obligations under the Agreement. Accordingly, Sweetser seeks recovery from Netsmart for its breach of contract, breach of express warranties, unjust enrichment, and negligence.

-1-

1279776.1

## PARTIES

2.     Sweetser is a Maine non-profit corporation with its principal place of business located at 50 Moody Street in Saco, York County, Maine.

3.     Defendant is a Delaware corporation with a principal place of business located at 146 Nassau Avenue, Islip, New York 11751.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this lawsuit pursuant to 28 U.S.C. § 1332 since the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. In this regard, (a) Sweetser is a resident and citizen of the State of Maine and (b) Defendant is an entity incorporated under the laws of the State of Delaware with a principal office/place of business in New York, making Defendant a citizen of Delaware and New York for purposes of diversity jurisdiction. *See* 28 U.S.C. §1332(c)(1).

5.     This Court has personal jurisdiction over Defendant insofar as: (a) it transacts business within the State of Maine; (b) it perpetrated tortious acts within the State of Maine and/or caused the consequences of such acts to occur within the State of Maine; (c) it owns, possesses, and/or uses real estate within the State of Maine; and/or (d) it contracted to supply services and/or things within the State of Maine.

6.     Venue for this lawsuit is proper in the United States District Court for the District of Maine pursuant to 28 U.S.C. § 1391(a) insofar as a substantial part of the events, omissions, and circumstances giving rise to Sweetser's claims in this lawsuit occurred in York County, Maine.

## GENERAL ALLEGATIONS

7.      Sweetser provides comprehensive mental health services for children, adults, and families in Maine.  It offers services to Maine residents that address emotional issues, major mental illnesses, substance abuse disorders, and educational disabilities through an integrated network of care that responds to the unique strengths and needs of each child, adult, and family that seeks its help.

8.      With a history dating back to 1828, Sweetser is Maine's most comprehensive behavioral healthcare organization for children, adults and families.

9.      Sweetser offers services that address emotional disturbances, mental illnesses, behavioral disorders, and learning disabilities through a network of educational programs, preventive services, community-support services, residential homes, and outpatient services.

10.     Working in more than eighty communities from Kittery to Bangor, Sweetser maintains counseling offices, a respected medical team, two schools for students with special needs, more than twenty residences, a training institute, a recovery center, and campuses in Belfast, Plymouth, and Saco.

11.     Sweetser relies on its computer systems and associated software to provide efficient and effective support services to its clients.

12.     Sweetser employs roughly one thousand individuals and hundreds of volunteers who are committed to a vision of helping people find promising futures.

13.     Netsmart supplies enterprise-wide software systems and related services to health and human services providers such as Sweeter.

14. Netsmart publicly represents itself as a nationwide leader in its industry, purportedly selling its products and services to more than 1,300 client organizations and over thirty governmental agencies across the country.

15. Sweetser solicited bids to upgrade its computer hardware and software systems through a Request-for-Proposal ("RFP") process. Sweetser intended these upgrades to help it improve all facets of its operations and improve its level of services to its clients. These systems would allow it to more efficiently serve its clients and provide more services to the communities its serves.

16. Netsmart responded to Sweetser's RFP and the parties entered into extensive discussions regarding Sweetser's needs and expectations for the system.

17. During the RFP process, Sweetser provided Netsmart with a very extensive document that laid out all billing requirements for the software. These same requirements were contained within the RFP and were subsequently discussed extensively with Netsmart.

18. Netsmart represented to Sweetser that its product would meet all requirements stated in the RFP and as discussed with Sweetser.

19. On September 2, 2005, Sweetser and Creative Socio-Medics Corp. ("CSM") entered into and executed the Agreement.

20. CSM is a former wholly-owned subsidiary of Netsmart. CSM is now a d/b/a of Netsmart and/or a division or other inextricable part of Netsmart.

21. At the time Sweetser executed this Agreement with Netsmart, it believed that Netsmart would deliver hardware and software systems that would comply with all material terms of the Agreement and that the systems would perform as promised and help it to meet its efficiency and client services expectations.

22. Pursuant to the terms of the Agreement, in exchange for Sweetser's total payment of $1,405,704 ($1,252,222 of which has already been paid and $153,482 of which would have been due upon Sweetser's acceptance of the software and hardware, which has not occurred), Netsmart was required to, among other things:

    a. grant Sweetser "a non-exclusive, perpetual[,] non-transferable license" to software and related hardware that was to be specially developed and designed for Sweetser's purposes and usage (the "software and hardware");

    b. install and implement the software and hardware on and into Sweetser's computer systems and operations;

    c. provide Sweetser with training and continued learning services relating to the software and hardware;

    d. deliver the software and hardware and certify that it was ready for testing; and

    e. test the software and hardware in support of an acceptance process.

23. Netsmart failed to deliver software and hardware that was certified ready for testing.

24. Netsmart failed to formally test the software and hardware in support of an acceptance process.

25. Pursuant to the Agreement, Netsmart expressly warranted to Sweetser that (a) the software and hardware would substantially conform in all material respects with its prescribed specifications and (b) it would correct all problems or defects in the software or hardware in a reasonably prompt fashion.

26. Netsmart failed to deliver on promises relating to the functionality and performance of its software and hardware made during the sales process.

1279776.1

27. Sweetser specified numerous requirements in its RFP which Netsmart said during the sales process were "doable," but which turned out to require the running of a "Crystal Report" to get the answer or were later identified as "core functions that cannot be changed."

28. Netsmart represented to Sweetser during the sales process that its software met all of Sweetser's requirements. However, once the contract was signed, Sweetser found itself in the position of either not being able to get certain requirements at all due to the way Netsmart's core system was built, or only being able to obtain needed functionality at additional expense.

29. Netsmart estimated that some of the identified customizations would cost more than $100,000.00.

30. Netsmart failed to write software fix and customization specifications, and Sweetser had to complete these requirements.

31. Netsmart provided erroneous project status updates that identified items as complete despite their not being tested nor accepted by Sweetser.

32. Pursuant to the terms of the Agreement, Netsmart was to commence implementation of the software and hardware in October 2005. Pre-kickoff was scheduled for October 3, 2005 and kickoff was scheduled for October 18, 2005.

33. Netsmart never provided Sweetser a finalized Statement of Work ("SOW") although, pursuant to the Agreement, this was supposed to be the first item completed before the formal kickoff meeting.

34. Netsmart delayed the implementation of the software and hardware, and it never actually completed the installation.

35. Sweetser promptly informed Netsmart of all implementation problems and deficiencies.

1279776.1

-7-

36. Netsmart assured Sweetser that it would address and correct all problems and deficiencies with the software and hardware.

37. Netsmart never successfully addressed or resolved the functionality problems with the software and hardware.

38. Training related to the software and hardware was to commence during the spring of 2005.

39. Netsmart's parent or core program that handles mostly billing, along with RADplus (which controls the utilities, system security and configuration, and system maintenance – *e.g.*, menus and custom fields) is called "Practice Management."

40. "Practice Management" was to commence in May 2006.

41. "Clinician Workstation" handles the bulk of the clinical functions that make up the electronic record – assessments, treatment planning and chart review.

42. "Clinician Workstation" was to commence live operation in September 2006.

43. Due to the aforementioned difficulties with the functionality of the software and hardware, Netsmart failed to meet the timelines for implementation of "Practice Management" and "Clinician Workstation."

44. As all of the aforementioned problems and difficulties continued to accumulate and linger unresolved, Sweetser asked Netsmart to replace the original project manager responsible for overseeing the various tasks and phases to be completed under the Agreement.

45. Netsmart replaced the original project manager with an individual with little prior experience in implementing Netsmart's software or hardware.

46. This individual was unqualified to manage a project of this magnitude.

47. Eventually, Netsmart became more engaged in Sweetser's project, but, ultimately, Netsmart failed to provide Sweetser with responses to important, time-critical requests. Additionally, it refused to work with Sweetser to allow it to use PsychConsult for billing while continuing to use Netsmart's Avatar system for the clinical portion of the electronic client record.

48. In an effort to resolve its issues and concerns with Netsmart, particularly the billing module, Sweetser offered an alternative to Netsmart. In particular, Sweetser proposed that rather than customizing the Netsmart system for what appeared to be a high cost and a long term process, Sweetser would use Netsmart's clinical module in tandem with its PsychConsult billing system.

49. Netsmart refused to consider a "bidirectional interface" which would allow this alternative.

50. Based upon Netsmart's continuing failure to fulfill its obligations under the Agreement and its failure to cure the many defects in the functionality of the software and hardware since they became known and were brought to Netsmart's attention, in March 2007, Sweetser concluded in good faith that Netsmart had breached the Agreement, leaving it with no other choice but to pursue other options.

51. Accordingly, Sweetser contracted with Askesis for products and services to take the place of those due from Netsmart under the Agreement.

## COUNT I – BREACH OF CONTRACT

52. Sweetser repeats all preceding Paragraphs – including all allegations asserted therein – as though fully set forth.

53. The Agreement constituted an enforceable and binding contract with respect to Sweetser and Netsmart.

54. Netsmart breached the Agreement.

55. Netsmart's breach of the Agreement has directly and proximately caused (and continues to cause) Sweetser to sustain various injuries and damages.

56. Netsmart is liable to Sweetser for its injuries and damages.

## COUNT II – BREACH OF EXPRESS WARRANTIES

57. Sweetser repeats all preceding Paragraphs – including all allegations asserted therein – as though fully set forth.

58. Pursuant to the Agreement, Netsmart expressly warranted to Sweetser that the software and hardware would "substantially conform in all material respects with their specifications."

59. Pursuant to the Agreement, Netsmart expressly warranted to Sweetser that it would "correct any problems or defects" with the Software or Hardware.

60. Netsmart breached both of these express warranties.

61. Netsmart's breach of these warranties to Sweetser has directly and proximately caused (and continues to cause) Sweetser to sustain various injuries and damages.

62. Netsmart is liable to Sweeter for these injuries and damages.

## COUNT III – UNJUST ENRICHMENT

63. Sweetser repeats all preceding Paragraphs – including all allegations asserted therein – as though fully set forth.

64. Pursuant to the Agreement, Sweetser conferred benefits upon Netsmart by paying it $1,252,222 for the software and hardware, which is not – and never was – functional as represented to Sweetser, and related services, which were never provided as represented to Sweetser.

65. Netsmart had appreciation and/or knowledge of the benefits that Sweetser conferred upon it.

Case 2:07-cv-00202-JZS Document 1 Filed 11/16/07 Page 9 of 11 PageID #: 9

66. Netsmart's acceptance and/or retention of these benefits was – and remains – under such circumstances as to make it inequitable for it to retain the benefits.

67. Netsmart has been unjustly enriched by its acceptance and retention of these benefits.

68. Netsmart is liable to Sweetser for the amount for which it has been unjustly enriched by Sweetser – namely, $1,252,222.

## COUNT IV – NEGLIGENCE

69. Sweetser repeats all preceding Paragraphs – including all allegations asserted therein – as though fully set forth.

70. Netsmart owed a duty of care to Sweetser with respect to its management and oversight of its performance under the Agreement, including, without limitation, its delivery of the software and hardware and provision of all related services required under the Agreement.

71. In particular, Netsmart owed a duty to Sweetser to ensure that the individual(s) responsible for managing, overseeing, and carrying out Netsmart's performance under the Agreement were reasonably qualified to do so.

72. Netsmart breached this duty to Sweetser by employing and charging individuals to manage, oversee, and carry out Netsmart's performance under the Agreement whom it knew or should have known to be unqualified to do so.

73. Netsmart's breach of its duties to Sweetser has directly and proximately caused (and continues to cause) Sweetser to sustain various injuries and damages.

74. Netsmart is liable to Sweetser for these injuries and damages.

## JURY DEMAND

75. Sweetser requests trial by jury on all claims that may be tried to a jury.

## PRAYER FOR RELIEF

Wherefore, premises considered, Sweetser prays for the following relief against Netsmart:

a.  a money judgment for all actual, compensatory, consequential, incidental, cover, and other damages in an amount to fully cover the harm caused by Netsmart's actions and inactions as set forth herein;

b.  all legal fees and costs incurred in connection with this lawsuit;

c.  an award of pre- and post-judgment interest; and

d.  such other and further relief, at law or in equity, as the Court deems just.

Dated in Portland, Maine on this 16th day of November 2007.

Respectfully submitted,

 /s/ Jeffrey W. Peters
**JEFFREY W. PETERS, ESQ.**
**FOY MEYER III, ESQ.**

**COUNSEL FOR PLAINTIFF SWEETSER**

**PRETI FLAHERTY BELIVEAU & PACHIOS, L.L.P.**
One City Center
P.O. Box 9546
Portland, Maine 04112-9546
(207) 791-3000
jpeters@preti.com